## MAULE *v.* WEAVER.

A. conveyed to B., by a deed recited to be an indenture *inter partes*, to which they had interchangeably set their hands and seals. In the deed was contained a covenant on the part of B. to pay A. a rent reserved out of the land. A. alone sealed the deed, and B. accepted the deed and entered; and by a subsequent deed conveyed the land subject to the rent. Covenant does not lie against B., because he did not seal the deed.

CERTIFICATE from the Nisi Prius.

*Jan.* 27. The only question in this cause was whether covenant would lie. In 1832, Weaver conveyed a larger lot to Maule, reserving a ground-rent which he assigned to Stillé. In May, 1836, a deed, styled in the premises an indenture between Maule of the first and Weaver of the second part, concluding "in witness whereof the said parties have hereunto interchangeably set their hands and seals, the day and year first above written," was sealed and signed by Maule alone. That deed recited the prior deed and the assignment of the ground-rent, and conveyed part of the same property to Weaver under and subject to the payment of the whole

of the ground-rent, with a covenant by Weaver with Maule to pay the said rent and keep Maule and his assigns owners, of the residue of the land, indemnified therefrom. The action was on this deed.` In the same month, Weaver conveyed by deed to Wager and others subject to this ground-rent.

The defendants gave evidence that the purchase was made by Weaver and nine others, and the title was taken by him to be conveyed to Wager in trust to partition the land. In that partition the lot subject to pay the rent was allotted to one Heyberger. None of the parties went into exclusive possession, but Weaver accepted the conveyance for the benefit of all the parties; and they paid the rent for some time.

The plaintiff proved payment by himself of a certain amount of the rents to Stillé, and a demand of Weaver.

BURNSIDE, J., ruled the action could be maintained, and the entry of Weaver for himself or partners bound him personally.

*Fallon*, for plaintiff in error.—Covenant does not lie against a party not executing the deed; it is the form of the instrument and not the entry which gives the action. The apparent exception of an assignee arises out of his privity of estate, and there it runs with the land. The point was in fact decided in Wilson *v.* Buchman, March Term, 1846 : Kearney *v.* Tanner, 17 Serg. & Rawle, 96, 2 Barr, 397, 6 Cow. 445; Stabler *v.* Cowman, 7 Gill & Johns. 288; Platt on Cov. 10, Chit. pl. 115; 1 Met. & Perk. Dig. § 326, 687.

*Williams*, contrà.—Weaver is named in the premises, and he has by a subsequent deed admitted the acceptance of the estate created by the deed, which is recited to be *inter partes*. From this the presumption is *de jure*, that there existed a counterpart of the indenture sealed by Weaver; E. I. Co. *v.* Lewis, 3 Car. & Payne, 358 : or the seal which is affixed should be considered that of both parties. Wilson *v.* Buchman is misstated in the Law Journal; the facts were, A. conveyed to B. who conveyed to C. with a covenant to pay A., and it was held that A. could not sue on that covenant. There are many cases where covenant lies, though there be no actual sealing. An entry under a deed containing a covenant by the grantee, is equivalent to sealing; Ewre *v.* Strickland, Cro. Jac. 240; Brett *v.* Cumberland, Id. 522. A mere acceptance of a deed-poll, which is matter of record as a royal patent, is equivalent to sealing : Touch. 177, 178. ` In Co. Litt. 230 b, 231 a, § 374, it is stated—demise to R. and D. D. sealed; R. did not, inasmuch as he had agreed, and R. was not joined; writ in covenant was abated.

To the same effect is 5 Rep. 16; 1 Roll. Abr. 517. So in 2 Roll. Rep. 63, three were enfeoffed; one did not seal but entered; he is liable in covenant: Com. Dig. *Covevant,* a; 1 Saund. Pl. & Ev. 389. The cases in which it does not lie is where there is no express agreement to take subject thereto. The liability of the assignee is upon this principle: by the entry, he agrees to be bound by the covenants running with the estate. Even on a deed-poll it will lie: Green *v.* Horne, 1 Salk. 197, 1 Roll. Abr. 517; Chancellor *v.* Poole, 2 Doug. 764. This rent was the essential part of the consideration, and the agreement was directly with the plaintiff: Staines *v.* Morris, 1 V. & B. 8; Hawkins *v.* Sherman, 3 Car. & Payne, 459; Burnett *v.* Lynch, 5 Barn. & Cres. 589.

*Reply.*—Where there is a signing after such a clause as this, the name opposite the seal indicates the adoption of that seal, only by the party signing: 1 Chit. Pl. 116.

*Feb.* 9. GIBSON, C. J.—How it came to be thought by the profession at an early day, and to be handed down to the present, that an action of covenant might be maintained against the grantee in a deed-poll under any circumstances, or against any one else who had not sealed it, I cannot imagine. It appeared to us in Wilson *v.* Buchman so evident on principle that it could not, that we ruled the point in a dozen of words, and directed the case not to be reported, as it seemed to contain nothing which could be of use as a precedent; but in that we were mistaken. Though the principle of that case has been recognised as a general one, but subject to exceptions founded on the royal prerogative, or the customs of particular places, it seems to have been thought that in all cases where a grantee takes an estate by a deed-poll, he may be compelled to perform the conditions of the grant by an action of covenant instead of an action of debt or assumpsit; and this supposition had its root in the case obscurely stated in Co. Litt. 331 a; but it is clearly shown by Mr. Platt, the only lawyer who has searched the original roll, that there has been a prodigious misconception of the language of Lord Coke, which was predicated, not of an action of covenant, but of an action of debt. Yet the same misconception existed in the mind of Chief Justice Abbott, in Burnett *v.* Lynch, by which, however, he affirmed the principle to which he supposed the case put by Lord Coke to be an exception. But the singularity of the exception ought to have sent the profession to the Year-Books for the original cases to which references were given, and in

which they would have found that the action in each of them was not covenant but debt. It ought to have occurred to them that forms of pleading are touchstones of the law, and that the most dexterous pleader would find himself unable to make a successful profert of a deed-poll as the act of one who had not sealed it. Mutual covenants may be contained in the same instrument; but each party must seal and deliver his own exactly as if they were contained in several parts of it. Mr. Platt is apprehensive that the contrary has been too long sanctioned by eminent compilers to be now shaken; but it has merely floated in the professional brain without an adjudged case to support it, or any thing better than the *obiter dictum* of a very distinguished Chief Justice, who took it as he found it set down in the digests and text-books. On the contrary, in Lock *v.* Wright, Stra. 571, it was held that mutual covenants cannot arise out of a deed-poll, because it is not the act of both parties, and the grantee on it is liable in an action of debt. Forms of action are founded in technical reason, and it is greatly important that they be kept to the line of technical congruity, else we should fall into a distressing state of uncertainty and confusion. A proof of this is the act of 1806, which, though it did well in abolishing the fiction in ejectment, introduced much unnecessary litigation as to forms of proceeding in the actions of debt and assumpsit, which are not entirely settled at the end of forty years.

But a more plausible argument is, that as the body of the instrument is in the form of an indenture, and contains a recital that it was interchangeably signed and sealed, the seal of the one should be taken for the seal of the other. So, indeed, it would, if the other had signed, or his adoption of the seal were proved by evidence *aliunde;* for instance, by the oath of one who saw it. Subscribing is intrinsic evidence to authenticate the seal, the signature attached to it being the party's particular mark to individuate it as the one affixed by him; but as signing is not a part of the execution, but only evidence of it, it follows not that the sealing may not be proved by evidence extrinsic to the deed. What evidence of adoption have we here? Nothing but the recital that the parties had signed and sealed, which was not allowed in Taylor *v.* Glaser, 2 Serg. & Rawle, 502, to supply the place of an actual seal. In that case, however, there was no actual seal, and here there is one; but whatever inference of adoption might else be drawn from the recital, is overborne by the fact that the grantor wrote his name to authenticate his seal, and the grantee did not. Now, though I do not entirely concur in what was said in McDill *v.* McDill, 1 Dall. 63, and in Long

*v.* Ramsay, 1 Serg. & Rawle, 72, that the signing of a deed is now the material part of the execution, I admit it is the most powerful evidence of the joint or separate ensealing of it; and that had the grantee in this instance also subscribed his name, he would have been bound as a covenantor. In the absence of that and every other direct proof, we are bound to say he executed no deed on which an action of covenant can be maintained against him.

Judgment reversed.