## Rucci's Estate

*Elmer D. O'Neill*, for accountant.
*J. Glenn Berry*, for claimant.
*Arnold DeSylvestro*, for Italian Embassy.

BRAHAM, P. J., December 11, 1946.—Upon audit of the account of Carmine A. Rucci, distributive shares of personal property were awarded to Leonardo Russi, his brother, and to Rosa Rucci, his sister, both residents of Italy. Two claimants appeared, each demanding the fund by virtue of a power of attorney acknowledged in Italy by Leonardo and Rosa Rucci, the first to Frank C. Ferrante of Coraopolis, Allegheny County, Pa., dated July 29, 1945, the second to Messrs. Fink & Young, attorneys, of New York City, N. Y., dated June 9, 1946. Each claimant has objected to the execution and validity of the power of attorney granted to the other.

Neither of these powers of attorney was signed, both reciting that Leonardo was physically unable to sign and Rosa was illiterate. Each was acknowledged before

an Italian notary public, whose authority is certified by an American vice consul in Italy. The legal problems therefore become one problem.

Is a power of attorney which relates to personal property to be distributed by the orphans' court valid if it is not executed, either by signature or by mark? This is our fundamental question. As to deeds conveying real estate the law has been settled for a long time. A deed must be signed: Miller v. Ruble et ux., 107 Pa. 395, 399; Watson et al. v. Jones et al., 85 Pa. 117, 124; Lorah, to use, v. Nissley, 156 Pa. 329, 331. In McDill v. McDill, 1 Dall. 66, decided in 1782, it was held that a deed bearing only a seal written in ink but attested by one witness and proved by him before a magistrate was good. McDill v. McDill is most commonly cited on the point that by that time it was decided the seal was a formality. By the time of Miller v. Ruble the court ruled that the affixing of the signature was the effective execution of a deed. Of course our Statute of Frauds of March 21, 1772, 1 Sm. L. 389, sec. 1, 33 PS §1, requires conveyances of land to be in writing and signed.

As to writings dealing with personalty the law is not so clear. The Act of June 3, 1885, P. L. 55, sec. 1, 16 PS §3325, applies to the recording of instruments conveying real estate but also to "letters of attorney authorizing . . . the receipts of money, the discharge and acquittance of legacies or distributive shares" and authorizes such letters of attorney to be recorded when acknowledged. Nothing in our law lends countenance to the view that instruments which are not executed either by signature or mark may be acknowledged or recorded. In fact section 5 of the Uniform Acknowledgment Act of July 24, 1941, P. L. 490, 21 PS §291.5, provides that the officer taking the acknowledgment shall know or have satisfactory evidence that the person making the acknowledgment is the "person described in and who executed the instrument".

How is an instrument such as a power of attorney to collect money to be "executed"? According to 2 Am. Jur. 31, sec. 28, as follows:

"In the absence of statute, no form or method of execution is required for a valid power of attorney; it may be in any form clearly showing the agent's authority and may be executed according to any recognized common-law method of executing written instruments".

The law of this jurisdiction is liberal as to how a document may be executed but it must be signed or executed by mark. There is no direct authority to this effect but it may be confidently asserted. The Uniform Acknowledgment Act of 1941 and the Recording Act of 1885, quoted above, assume the common practice to be the law. The Act of June 18, 1895, P. L. 209, 28 PS §281, which includes typewriting as writing, specifically exempts the "law as it now is respecting signatures". In Tomilio v. Pisco et al., 123 Pa. Superior Ct. 423, 428, it was ruled that any mark may be adopted as a signature. In Fitzpatrick v. Engard et al., 175 Pa. 393, the court points out how one may employ the hand of another to sign his name. The signing of wills is a subject governed largely by statute. It must be noted, however, that prior to 1833 wills could be executed without signature or mark: Hunter's Estate, 328 Pa. 484, 488.

It was once the law that sealing was more important than signing, this because so few people could write. A late appearance of this view is found in Justice Gibson's statement in Maule v. Weaver, 7 Pa. 329, 332, to the effect that "signing is not a part of the execution, but only evidence of it", a view criticized in Miller v. Ruble et ux., 107 Pa. 395, 400. Justice Holmes describes the history of seals and genesis of the action of covenant as a separate form of action in The Common Law, 272, 273. But in this State by the Acts of April 1, 1909, P. L. 91, and April 30, 1925, P. L. 404,

sec. 9 21 PS §10, the necessity for seals on conveyances of land has been done away with. Hence Chief Justice Gibson's dictum in Maule v. Weaver is no longer law in the field where it was decided because seals are not now required on deeds but signatures are required. Under general law execution means signing: Coen v. American Surety Co. of N. Y., 120 F.(2d) 393.

Our conclusion is that by the law of this State execution of these powers of attorney either by signature or mark was required. A power of attorney is a formal tender of authority to act for the principal within the scope of its terms. It is designed for use where the principal is not present and should be executed with sufficient formality to carry on its face convincing evidence of its genuineness. To be sure, a paper may be adopted by one as his act although not signed (7 Wigmore on Evidence 579, §2134) and the authority of an agent may in general be shown by oral or written words (Brock et al. v. Real Estate-Land Title and Trust Co., 318 Pa. 49, 56) ; but no one would expect to present such a paper in court and receive a distributive share by virtue of it.

The law would reject a written statement of two witnesses under oath that Leonardo and Rosa Rucci had constituted Fink & Young their attorneys in fact, and would have rejected the certificate of the notary to the same effect, demanding rather to hear the witnesses in court: Ulrich's Case, 267 Pa. 233, 238; 5 Wigmore on Evidence 76, §1384. Just so the law rejects the certificate of the Italian notary that Leonardo and Rosa Rucci orally acknowledged before him to have granted power of attorney to either or both of claimants to appear in the present proceedings and act for them. It required an act of assembly to make a notary's protest of commercial paper evidence in court (Act of December 14, 1854, P. L. (1855) 724, sec. 2, 28 PS §222) and nothing but an act of assembly would make the present writing competent.

The thing lacking is execution. If executed in the manner provided by law, either by signature or by mark, the letter of attorney might have been acknowledged under the Uniform Acknowledgments Act, supra, and if acknowledged might have been recorded under the Recording Act of 1885, supra, and if recorded might have been admitted in evidence. Lacking execution it is nothing. The orphans' court has the right and duty to make sure a power of attorney is genuine and complete; Little's Estate, 43 D. & C. 285; Jones' Estate, 41 D. & C. 405.

Finally it must be considered whether the execution of these powers of attorney was good because in accordance with the law of Italy and whether the law of the place of execution (if they were executed) is to prevail over the law of the forum. Ordinarily the formalities of contract are governed by the law of the place of contracting: A. L. I. Restatement of Conflict of Laws, §334. There is no evidence as to the law of Italy; no information has been given us as to how a document is to be executed in Italy by persons unable to write and we have been able to find none. The Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, sec. 5, 28 PS §295, makes the law of a foreign country an issue of fact as to which judicial notice need not be taken. In the absence of evidence the law of a foreign country is presumed to be the same as the law of Pennsylvania: Bollinger v. Gallagher et al., 170 Pa. 84, 94. In any event, consent by the agent was necessary to complete the contract of agency initiated by the attempted granting of the power: A. L. I. Restatement of Agency §15. Thus the contracts were not completed in Italy.

Having determined that under the law of this State a power of attorney to collect and receipt for a distributive share in a decedent's estate must be signed before it is entitled to recognition by the orphans' court and that under the facts before us the law of the place

where the power is accepted governs, we pass to the practical question as to what to do with these shares.

The estate has been delayed in distribution because Leonardo and Rosa Rucci were enemy aliens. They are apparently illiterate. Even now their shares can be paid to them only by deposit in a blocked bank account. The relevant order of the United States Treasury Department is General License No. 30-A which appears in evidence. After granting authority in a general way to distribute the assets the license provides:

"Provided, however, that any property paid or distributed to a national of a blocked country pursuant to this general license shall be subject to all the provisions of the Order, and provided, further, that any payment or distribution of any funds, securities, or other choses in action to a national of a blocked country shall be made by deposit in a blocked account in a domestic bank or with a public officer, agency, or instrumentality designated by a court having jurisdiction of the estate (I) in the name of the national who is the ultimate beneficiary thereof; (II) in the name of a person who is not a national of a blocked country, in trust for the national who is the ultimate beneficiary; or (III) under any other designation which clearly shows the interest therein of such national."

In our view distribution should be made by deposit in a blocked account in a domestic bank to the credit of Frank C. Ferrante as trustee for Leonardo Rucci and Rosa Rucci. Mr. Ferrante is selected because he is a long time resident of this county who is known to the trial judge and who came from the district in Italy where Leonardo and Rosa Rucci reside. He is also represented by an attorney here. Fink & Young on the contrary live in New York City, were not acquainted with the two beneficiaries in Italy and are not represented by any attorney in this country. The court should

so handle this fund as to make sure the beneficiaries get it. Although we are obliged to strike down both powers of attorney relied upon, the deposit in the blocked account in the name of Frank C. Ferrante as trustee will make it possible for the court to control his handling of the funds, including the compensation paid to him as trustee.

Entertaining these views we make the following

### *Decree nisi*

And now, to wit, December 11, 1946, the account in this case having been filed, examined and confirmed absolutely, and no exceptions having been filed thereto, it further appearing that due notice hereof has been given by publication, it is now decreed that the funds in the hands of the accountant, to wit, $2,699.36 be paid in accordance with the schedule of distribution hereto attached and make part hereof, unless exceptions are filed within 10 days.

### *Schedule of distribution*

| | |
|---|---|
| Balance due estate | $2,699.36 |
| Additional assets | 2.25 |
| | $2,701.61 |
| Costs paid to Alien Property Custodian | 88.00 |
| | $2,613.61 |
| Balance for distribution | $2,613.61 |
| For deposit in a blocked account in First National Bank of New Castle, Pa., to the credit of Frank C. Ferrante, trustee for Leonardo Rucci | $1,306.80 |
| For deposit in a blocked account in First National Bank of New Castle, Pa., to the credit of Frank C. Ferrante, trustee for Rosa Rucci | 1,306.80 |
| | $2,613.61 |